UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARION HOOD, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ACTION LOGISTIX, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. 4:20 CV 978 RWS |

# MEMORANDUM AND ORDER

Darion Hood ("Hood") brings this class action suit against Action Logistix, LLC ("Action Logistix"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Action Logistix moves to dismiss Hood's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). I will deny the motion for the reasons explained below.

# BACKGROUND

In March 2019, Hood applied for a position at Action Logistix. He interviewed and received a tentative offer of employment, conditioned on the successful completion of a background check. He called Action Logistix the next day to check on the status of his background check, as instructed, and was told that the report was not ready. He called again the following Monday and was informed that he was no

1

longer eligible for employment due to information uncovered by his background check. Hood asked to see the report and was told he could pick up a copy in person.

In his complaint, Hood states that Action Logistix violated his rights under 15 U.S.C. § 1681b(b)(3)(A) because he was not provided with an FCRA Summary of Rights or given the opportunity to review the report and address the information it contained before the employment offer was withdrawn.[1] He has not alleged that any of the information in the report was incorrect or misleading.

## **LEGAL STANDARD**

The party invoking subject matter jurisdiction bears the burden of establishing that the case is properly in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). To satisfy the requirements of constitutional standing, the plaintiff must show (1) that he suffered an injury in fact; (2) that the injury he suffered is fairly traceable to the challenged action of the defendant; and (3) that the injury is likely to be redressed by a favorable court decision. Id. at 560-61. If these three requirements are not satisfied, a court does not have subject matter jurisdiction over the case and must dismiss it. ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011).

---

[1] Withdrawing an offer of employment constitutes an "adverse action" under the FCRA. 15 U.S.C. § 1681a(k)(1)(B)(ii) (adverse action includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee").

2

When deciding a Rule 12(b)(1) motion to dismiss, I must determine whether the movant's attack on jurisdiction is "facial" or "factual." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If the attack is facial, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. If a movant raises a factual attack, the court may consider matters outside the pleadings. Id. I will construe this motion to dismiss as a facial attack on jurisdiction because Action Logistix has not "challenge[d] the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (citation omitted).

## ANALYSIS

Action Logistix argues that this case should be dismissed because Hood has not suffered any concrete injury and therefore lacks standing. This argument is grounded in the United States Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016). In Spokeo, the Court clarified when intangible injuries are sufficiently concrete to satisfy the injury-in-fact requirement of constitutional standing. Id. at 1549. The Court explained that the "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." Id. However, it also emphasized that "a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement." Id.

3

Although defendants have used Spokeo to challenge standing in a variety of cases nationwide, especially in the FCRA context, the case "was not a change in the substantive law" of Article III standing. Schumacher v. SC Data Center, Inc., 912 F.3d 1104, 1106 (8th Cir. 2019).

> 15 U.S.C. § 1681b(b)(3)(A) provides:
>
>> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under section 1681g(c)(3) of this title.

Two circuit courts have addressed factual scenarios like the one presented here and found that plaintiffs have standing to bring § 1681b(b)(3) claims under these circumstances. See Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 319 (3d Cir. 2018) (finding that plaintiffs had standing to assert their claim that defendant had violated the FCRA by not providing copies of their consumer reports before rescinding their job offers and analogizing the deprivation of the right to receive the reports to common law privacy torts); Robertson v. Allied Sols., LLC, 902 F.3d 690 (7th Cir. 2018) (same, but finding that the deprivation constitutes an informational injury). But see Dutta v. State Farm Mut. Auto. Ins. Co., 895 F.3d 1166, 1175 (9th Cir. 2018) (plaintiff cannot establish standing by showing a bare violation of § 1681b(b)(3); rather, he must "demonstrate actual harm or a substantial risk of such harm resulting from the violation," which did not exist in this case because the

4

defendant still would not have hired the plaintiff even if he had had the opportunity to contest certain information in his consumer report). Many district courts have reached the same conclusions as the Third and Seventh Circuits. See, e.g., Mattiaccio v. DHA Group, Inc., 474 F.Supp.3d 231 (D.D.C. 2020); Jones v. Salvation Army, 2019 WL 6051437 (M.D. Fla. Nov. 15, 2019); Anderson v. Wells Fargo Bank, N.A., 266 F.Supp.3d 1175 (D.S.D. 2017); Thomas v. FTS USA, LLC, 193 F.Supp.3d 623 (E.D. Va. 2016).

One judge in the Western District of Missouri repeatedly found that plaintiffs like Hood lack standing to assert claims under § 1681b(b)(3). Campbell v. Adecco USA, Inc., 2017 WL 1476152 (W.D. Mo. Apr. 24, 2017); Davis v. D-W Tool, Inc., 2017 WL 1036132 (W.D. Mo. Mar. 17, 2017); Boergert v. Kelly Serv., Inc., 2016 WL 6693104 (W.D. Mo. Nov. 14, 2016). These cases stood for the proposition that plaintiffs only have standing to sue under § 1681b(b)(3) if they allege that the consumer reports at issue contained incorrect information; if the reports are accurate, plaintiffs have not suffered "any injury beyond the lack of access to [statutorily required] information." Campbell, 2017 WL 1476152, at *3. However, Judge Nanette Laughrey, who issued these rulings, later departed from this logic and found that a plaintiff has standing even if she does not contest the accuracy of information in her consumer report. Schumacher v. SC Data Center, Inc., 2019 WL 4392306, at *5 (W.D. Mo. June 3, 2019). Following Long and Robertson, Judge Laughrey

5

concluded that the plaintiff suffered an injury in fact because she was deprived of "the opportunity to contest or contextualize the contents of the report." Id.

The Missouri Court of Appeals has adopted Judge Laughrey's earlier position. See Campbell v. Adecco USA, Inc., 561 S.W.3d 116, 123 (Mo. Ct. App. 2018) (upholding circuit court's dismissal of plaintiff's adverse action claim for lack of standing after case was remanded from federal court because plaintiff "failed to identify what the alleged errors in the consumer report were or how those alleged errors caused him harm or presented a material risk of causing harm"); see also Courtright v. O'Reilly Auto., 604 S.W.3d 694 (Mo. Ct. App. 2020) (finding that only one of four plaintiffs had standing to pursue his adverse action claim because he alleged that the consumer report his employer obtained contained inaccurate information while the other plaintiffs did not).

The United States Court of Appeals for the Eighth Circuit has not yet addressed the issue of standing under § 1681b(b)(3). See Schumacher, 912 F.3d at 1106. However, both Hood and Action Logistix argue that the Eighth Circuit has previously considered the broader question of when a statutory violation can constitute a concrete injury, and that those cases are persuasive in this context. Hood points to Citizens Telecomm. Co. of Minnesota, LLC v. Fed. Commc'ns Comm'n, 901 F.3d 991 (8th Cir. 2018) while Action Logistix relies on Auer v. Trans Union, LLC, 902 F.3d 873 (8th Cir. 2018).

6

According to Hood, Citizens established that "where a statute provides the right to notice and an opportunity to contest an action; the failure to provide notice or the right to contest causes concrete harm." However, the question in Citizens was whether the FCC's rulemaking process violated the Administrative Procedures Act ("APA"). 901 F.3d at 1006 (concluding that "the law regarding prejudice under the APA ensures procedural integrity. Losing the opportunity to dissuade an agency from adopting a particular rule is prejudicial.") (citation omitted). The case was not about Article III standing.

The Eighth Circuit did discuss standing under the FCRA in Auer. However, the plaintiff in that case did not allege any violation of § 1681b(b)(3); her claims arose from different provisions of the FCRA. Auer was fired from her job approximately three months after she was hired. She alleged that her former employer had not obtained her proper written authorization for disclosure of her consumer report; that the employer used the report for purposes unauthorized by the FCRA; and that the employer had given a copy of the report to her attorney for an unauthorized purpose without first obtaining her permission. She alleged "injury to her privacy, reputation, personal security, the security of her identity information and loss of time spent trying to prevent further violations of her rights under the FCRA." 902 F.3d at 877. The court held that Auer had not suffered an intangible injury to her privacy because she admitted that she consented to the employer

7

obtaining the report; her other injuries were also not sufficient to confer standing because she did not plead specific facts in support of her claims. Because both the specific claims that the plaintiff brought under the FCRA and the injuries she alleged differ from Hood's, there are meaningful distinctions between Auer and this case.

 Neither of these cases is as analogous to the present case as the parties contend. I am persuaded by the cases decided by the various courts that have addressed this issue directly. Following the logic of the Ninth Circuit and the Missouri Court of Appeals, Action Logistix repeatedly emphasizes that Hood has not contested the accuracy of any information in his consumer report. This argument assumes that § 1681b(b)(3)(A) is solely aimed at ensuring accuracy in consumer reports. Certainly, this was one of Congress's goals in enacting the FCRA. Spokeo, 136 S.Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk"). However, as § 1681(b) states, the FCRA serves several purposes: "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." The Third Circuit explained that this language indicates that § 1681b(b)(3)(A) is "not so narrow" that it applies only when individuals wish to contest a consumer report's accuracy:

> The right to pre-adverse-action disclosures serves all of the purposes discussed above [in § 1681(b)]: accuracy, relevancy, proper utilization, and fairness…§ 1681b is not limited to situations where the report is inaccurate. In addition, it would not make sense for § 1681b(b)(3) to apply only to inaccurate information, because the consumer cannot know whether his report is accurate unless it is disclosed to him. Finally, if Congress meant to provide protections only against the use of inaccurate consumer reports, it could have written the statute to say so.

Long, 903 F.3d at 319.

Section 1681b(b)(3)(A) clearly states that anyone who obtains a consumer report "for employment purposes" must furnish a copy of the report and a summary of rights to the individual that the report concerns **before** any adverse action is taken. It does not explain why the report must be furnished or how the individual receiving the report is then permitted to use it. Congress could have included language limiting the purposes for which the report could be used, like it did in the next portion of the statute. The Seventh Circuit has pointed out that § 1681b(b)(3)(B) expressly states that individuals applying to positions controlled by the Secretary of Transportation are entitled to "dispute with the consumer reporting agency the accuracy or completeness of any information in a report" if they request a copy. § 1681b(b)(3)(B)(i)(IV); see also Robertson, 902 F.3d at 695-96. There is no such qualifier in § 1681b(b)(3)(A); it "contemplates a broad opportunity to respond." Robertson, 902 F.3d at 696.

9

Other courts have explained how the pre-adverse-action disclosure requirement grants individuals substantive privacy and information rights. An unsuccessful job applicant suffers a concrete harm when he is deprived of these rights—even if the information in the report is true and accurate. See Jones, 2019 WL 6051437, at *6 (plaintiff's "inability to provide context concerning her negative credit information that could have possibly changed The Salvation Army's mind [about hiring her] is a concrete injury"); Robertson, 902 F.3d at 697 ("[p]roviding context may be more valuable than contesting accuracy…[i]nformation that seems damning at first glance might not be so bad in context. A person with a spotted record might convince an employer to revisit its decision if she can explain what happened."); Thomas, 193 F.Supp.3d at 638 (plaintiffs suffered an injury because they "were deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports…before suffering adverse employment action"). Hood alleges that something in the report triggered Action Logistix's decision to withdraw its conditional offer of employment. Had he been able to view the report before the job offer was revoked, he could have identified the negative information and offered some explanation for it.

The Supreme Court has instructed courts to examine "both history and the judgment of Congress" when determining whether an intangible injury is sufficiently concrete. Spokeo, 136 S.Ct. at 1549. History supports a finding of concreteness if

there is a "close relationship" between the harm alleged and "a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. Hood appears to frame the harm he suffered as an informational injury, which courts have recognized as sufficiently concrete in a variety of contexts. Id. at 1549-50 (citing Fed. Election Comm'n v. Atkins, 524 U.S. 11, 20-25 (1998); Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)). The Eighth Circuit has discussed informational injuries in one post-Spokeo case, Braitberg v. Charter Comm'ns, Inc., 836 F.3d 925 (8th Cir. 2016). In Braitberg, the plaintiff alleged that he suffered a concrete injury to his privacy when a cable company retained his personal identifying information, in violation of the Cable Communications Policy Act. The Eighth Circuit concluded that he had alleged a mere procedural violation that did not result in a concrete harm and therefore lacked standing. Id. at 930.

One district court in this circuit has held that Braitberg does not dictate whether "FCRA claims constitute injuries." See Anderson, 266 F.Supp.3d at 1185-86. I agree. Braitberg did not involve any provisions of the FCRA. The plaintiff in Braitberg also alleged that he suffered an invasion of his privacy, which differs from the informational injury that Hood alleges in this case. Additionally, the harm that the plaintiff in Braitberg alleged was far more speculative; he "identifie[d] no material risk of harm from the retention [of his personal information]." 836 F.3d at 930. By contrast, Hood alleged that he was specifically deprived of the opportunity

11

to explain the information in his consumer report before his job offer was withdrawn. Braitberg does not establish that informational injuries alleged under the FCRA cannot be a basis for lawsuits in this circuit. The informational injury that Hood has alleged is supported by precedent and is a traditional basis for lawsuits in this country.

As discussed previously, the language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm. See Thomas, 193 F.Supp.3d at 632-33 (concluding that "it was Congress' judgment…to afford consumers rights to information and privacy) (citing H.R. Rep. No. 103-486, 103d Cong., 2d Sess. (1994)). As a result, I find that Hood has alleged a concrete injury and because he has satisfied the other elements of constitutional standing, I will deny Action Logistix's motion to dismiss this case.

Hood argues in the alternative that he established standing by pleading a claim for breach of a de facto or implied contract. First, because "standing is not dispensed in gross," Hood "must demonstrate standing for each claim he seeks to press." Davis v. Fed. Election Com'n, 554 U.S. 724, 734 (2008) (citations omitted). Even if he did have standing to bring a state law claim, that would have no bearing on his ability to bring an FCRA claim. However, as Action Logistix correctly notes, Hood did not

plead a separate claim for breach of a de facto or implied contract in his complaint. He stated that "[t]he FCRA creates a de facto contract between the Plaintiff and the Defendant," but he did not plead any facts supporting such a claim. See <u>American Eagle Waste Indus., LLC v. St. Louis Cty.</u>, 379 S.W.3d 813, 829 (Mo. banc 2012) (providing the elements of a quasi-contract under Missouri law). Hood's statement regarding a de facto contract is an unsupported legal conclusion. It has not been sufficiently pleaded as an independent claim in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Action Logistix LLC's motion to dismiss, [11], is **DENIED**.

*(signature)*
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2021.